UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY WINGET and the LARRY WINGET
LIVING TRUST,

    Plaintiffs,

v.                                                                                                                       Case No. 06-13490

JO MORGAN CHASE BANK, N.A.,                                                    HON. AVERN COHN
JP MORGAN CHASE & CO.,
BLACK DIAMOND COMMERCIAL FINANCE, LLC,
BLACK DIAMOND CAPITAL MANAGEMENT
LIVING TRUST,

    Defendants.
_____/

**MEMORANDUM AND ORDER
GRANTING THE AGENT'S (JP MORGAN) MOTION TO DISMISS
AND
DENYING THE AGENT'S MOTION TO STRIKE JURY DEMAND AS MOOT
AND
GRANTING BLACK DIAMOND'S MOTION TO DISMISS
AND
DISMISSING CASE**

I.  Introduction

This is a commercial finance dispute which has spawned two cases.  In the first case, **JPMorgan Chase Bank, N.A.**, the Administrative Agent (Agent) for a group of lenders (Lenders) that extended credit to **Venture Holdings Company, LLC** (Venture) under a Credit Agreement,[1] is suing **Larry Winget** and the **Larry Winget Living Trust**

---

[1] Bank One, NA, was the Administrative Agent for the lenders.  It merged with JP Morgan in 2004.  JP Morgan succeeded to Bank One, NA's rights.

(Winget) seeking (1) specific performance and declaratory relief related to a written guaranty agreement (Winget Guarantee) in favor of Agent in connection with the indebtedness of Venture and (2) obtain a declaratory judgment as to its rights under two of the several Pledge Agreements dated October 21, 2002 also executed by Winget in favor of the Agent. JP Morgan v. Winget, 05-74141 (the 2005 case).

As will be explained, on August 9, 2006, Winget filed a complaint against the Agent, Black Diamond Commercial Finance, LLC, and Black Diamond Capital Management, LLC (collectively, Black Diamond) (the 2006 case). The complaint generally asserts the same claims that previously appeared as amended counterclaims in the 2005 case They are:

    Count I    Declaratory Relief - Breach of Contract (regarding the Guaranty and Pledge Agreements)

    Count II    Declaratory Relief - Condition Subsequent

    Count III    Impairment of Collateral

    Count IV    Oppression of Shareholder's Interests

Before the Court are the following motions in the 2006 case:

- The Agent's Motion to Dismiss

- Black Diamond's Motion to Dismiss

- The Agent's Motion to Strike Jury Demand

For the reasons that follow, the Agent and Black Diamond's motions to dismiss are GRANTED. The Agent's Motion to Strike Jury Demand is DENIED AS MOOT. This case is DISMISSED.

II.  Background

A.  General

Venture was a parent holding company for various subsidiaries (the Venture entities).  Together with Deluxe Pattern Corporation and a group of affiliated companies (the Deluxe entities), the Venture entities became a worldwide supplier of plastic automotive components.  Larry Winget, either directly or through a trust, owned 100% of the equity of the Venture entities and the Deluxe entities.  Winget also owns other entities, including P.I.M. Management Company (PIM) and Venco #1, LLC (Venco).

The Agent advanced credit to Venture under the terms of a Credit Agreement dated May 27, 1999.  The Credit Agreement was amended eight times, most recently on October 22, 2002 (the Eighth Amendment).  The Eighth Amendment was executed at a time where the financial condition of Venture and its affiliates was rapidly deteriorating.  Under the Eighth Amendment, Winget executed the Winget Guaranty and the Pledge Agreements.  PIM and Venco also executed Guaranties (the PIM Guarantee and the Venco Guaranty) and Pledge Agreements that were similar, but not identical, to the Winget Guaranty.

Section 5.2 of the Pledge Agreements, which is the major provision at issue, provides:

> ...the Agent shall not exercise any rights or remedies under [the] Pledge Agreement until all reasonable efforts shall have been made by it to collect the Obligations form other collateral held by the Agent ... , it being intended that the collateral provided by [the] Pledge Agreement shall be realized upon by the Agent only as a last resort.

On March 28, 2003, the Venture entities, under the direction of Winget, filed for a Chapter 11 reorganization.  Bank One, and subsequently Black Diamond Commercial

3

Finance, LLC provided debtor in possession (DIP) financing.

On May 21, 2004, the Agent exercised its rights to vote proxies for the Deluxe Entities. Specifically, the Agent voted to elect new directors and managers. On May 24, 2004, the Deluxe Entities filed Chapter 11 petitions.

Plans to reorganize the Venture Entities and the Deluxe Entities were pursued, but ultimately were not successful because the amount of "exit financing" necessary to support the emerging companies was greater than the amount Winget would consent. Accordingly, the assets of the Venture Entities and the Deluxe Entities were sold at auction.

On April 19, 2005, the bankruptcy court entered a Sale Order approving the sale of substantially all of the assets of the Venture and Deluxe Entities to the highest bidder, an entity known as New Venture Holdings, LLC. The sale was consummated in May 2005. Following the sale, a deficiency of approximately $375 million remained on the obligations under the Credit Agreements.

B.  The 2005 Case

On October 28, 2005, the Agent filed a two count complaint for (1) specific performance and (2) declaratory judgment. Under Count I, the Agent sought to inspect Winget's financial records relating to Venture and affiliated companies, particularly PIM and Venco, pursuant to Section 11 of the Guaranty with Winget. The Agent essentially sought to monitor the value of its collateral under the Guaranty. Under Count II, the Agent asked the Court to declare the rights of the parties under two Pledge Agreements between the Agent and Winget as to PIM and Venco. The Agent asked for a determination of whether PIM and Venco are collateral under the Credit Agreement.

4

Winget answered the complaint and asserted several affirmative defenses and also filed a counterclaim (which was later amended) naming the Agent, Bank One Corporation, and Bank One N.A. as defendants and also requesting a jury demand. The affirmative defenses were as follows:

1. Plaintiff's action was barred under the terms of the Guarantee due to its first material breach of the related Pledge Agreements

2. Plaintiff materially breached its duty to act reasonably to protect the collateral in its possession so as to not impair its value, and in doing so, acted willfully, recklessly or intentionally

3. Winget was excused from performance under the Guarantee due to Plaintiff's material breach of the related Pledge Agreements

4. Winget, PIM and Venco were entitled to setoff in an amount equal to the damages caused by the actions set forth in Paragraphs 1 through 5 above

5. Plaintiff's claims were barred based on unclean hands

6. Plaintiff's claims were barred by lack of good faith

7. Winget reserved the right to assert additional affirmative defenses as they became known through discovery

The Agent filed a motion to dismiss the amended counterclaim and a motion to strike the jury demand filed in connection with the amended counterclaim. On June 29, 2006, the Court entered an order dismissing the amended counterclaim without prejudice and directing Winget to file a new complaint against the Agent and other third parties. Winget complied by filing the second case, the 2006 case, discussed further below.

The Agent then filed a motion for motion for judgment on the pleadings to (1) strike Winget's affirmative defenses as they relate to both counts of the complaint and (2) for judgment on count I of the complaint. The motion was heard on September 27,

2006 at which time the Court stated that the Agents were entitled to summary judgment on Count I, Count II would be dismissed without prejudice and Winget's affirmative defenses as related to Count II and in particular as to their counter-claims, would be determined in the 2006 case. The Court issued a Memorandum on October 3, 2006 further detailing its reasons. On December 15, 2006, the Court entered an Amended Order with respect to the Agent's complaint which ordered Winget to comply with the audit request in Count I and dismissed Count II. As to Count II, the Court stated:

> For the reasons explained in the Court's October 3, 2006 Memorandum, Defendants' affirmative defenses, to the extent they are interpreted to challenge whether Plaintiff has complied with § 5.2 of the Pledge Agreements, shall not be litigated in this case but instead shall be litigated in [the Winget case], or in response to Plaintiff's efforts to foreclose on the Pledge Agreements.

This order effectively ended the case. Winget appealed. The appeal is pending in the Court of Appeals for the Sixth Circuit.

### C.  The 2006 Case

On August 9, 2006, Winget filed the complaint in a second case as directed. The overall thrust of the complaint, as explained by Winget, is that

> The Consortium [the Agent, Black Diamond and others] therefore launched to coerce Winget to contribute Venco and PIM, which were and are worth over $250 million, and thereby increase their collateral pool at a time when Venture was in serious financial trouble. Defendant Black Diamond was a key participant in the Consortium because it was the "DIP Lender" to Venture and owed substantial amounts of the debt owed by Venture under the Credit Agreement.
> ...
> ...the acts and omissions of the Consortium and of the Agent as its Agent in failing to sell the Venture and Deluxe companies for a reasonable sum in a reasonable time, thereby exposing Winget to liability under the Guaranty Documents...The Complaint does not attack the sale of the assets of the Venture and Deluxe debtors in the Bankruptcy proceedings to an entity controlled by the Consortium or any aspect of the sale. To the contrary, Winget's claim is that the sale approved by the Bankruptcy Court was caused by the Consortium's

abandoning its duty to Winget as a Guarantor in instead pursue gaining control of PIM and Venco.

As the Agent explains it:

The gravamen of Winget's claims is that the sale of Venture's and Deluxe's assets did not generate sufficient funds to cover Venture's outstanding obligations under the Credit Agreement - leaving Winget, PIM, and Venco "wrongfully exposed" to liability for the remaining deficiency under their Guaranties - because the value of the Deluxe Entities had decreased as a result of the Agent's and Black Diamond's actions.

As Black Diamond explains it:

Winget alleges that [the Agent], as an administrative agent to a Consortium of lenders under a Credit Agreement dated May 27, 1999, as well as Black Diamond, as a [DIP lender] and limited participant in the Consortium, engaged in a purported "Consortium Scheme" that was intended to destroy the value of a group of entities owned by Winget called the Venture Companies and the Deluxe Companies. The alleged purposes of this "scheme" was the deliberately "compromise" to value of their assets of Venture and Deluxe so that the Consortium could "appropriate" collateral as "part of a favorable foreclosure sale" (and thereby not only obtain assets of Venture and Deluxe but also give the Consortium a right to foreclosure on additional collateral owned by Winget).

The alleged "scheme" as detailed in Winget's claims, can be summarized as follows:

In Count I, entitled Declaratory Relief - Breach of Contract, Winget alleges that in pursuing the Consortium scheme, the Agent and Black Diamond "failed to make 'all reasonable efforts' to satisfy the obligations owed to the Consortium from collateral that included the Venture Companies and the Deluxe Companies, as provided in the Guaranty Documents." Compl. at ¶ 54. As a result, Winget is "wrongfully exposed to liability and loss under the Guaranty Documents." Id. at ¶ 56. Wiget requests a declaration that the Agent and Black Diamond breached the Guaranty Documents by failing to use all "reasonable efforts" to collect amounts owed to the Consortium from

7

other collateral, that the Guaranty Documents are not enforceable, and that the Agent and Black Diamond acted maliciously.

In Count II, entitled Declaratory Relief - Condition Subsequent, Winget alleged that "in attempting to enforce the Guaranty Documents" the Agent asserts that it can use self help in exercising its rights without prior notice to Winget.  Winget wants a declaration that the Guaranty Documents "have an implied duty to provide reasonable notice to WInget before exercising any self help remedies."

In Count III, entitled Impairment of Collateral, Winget alleges that the Agent and the Consortium did not exercise reasonable care in the custody and/or preservation of collateral pledged to the Agent for the Consortium.

In Count IV, entitled Oppression of Shareholder's Interests, Winget alleges that the Agent, Black Diamond, and the Consortium, engaged in a course of conduct that was willfully unfair and oppressive to Winget's interest as a shareholder in the Deluxe Companies.  He also alleges that the Agent and Black Diamond aided and abetted in the actions of two individuals regarding breaches of fiduciary duty.

### III.  Legal Standard

When analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take a plaintiff's well-pleaded allegations as true.  Miree v. DeKalb County, 433 U.S. 25, 27 n.1 (1977).  "[W]hen an allegation is capable of more than one inference, it must be construed in the plaintiff's favor."  Sinay v. Lawson & Sessions Co., 948 F.2d 1037, 1039-40 (6th Cir. 1991).  "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

IV.  Analysis

A.  Overview

Both the Agent and Black Diamond have filed motions to dismiss.  Both motions raise a host of arguments in support.  Specifically, the Agent argues that: (1) the complaint must be dismissed in its entirety because Winget's claims are barred by <u>res judicata</u>, (2) the complaint must be dismissed in its entirety because all of the asserted claims were waived under the Guaranties, Pledge Agreements, and Settlement Agreements between the parties, (3) Count I must be dismissed because it fails to state a claim for breach of contract, (4) Count II must be dismissed because the requested declaratory relief, an amendment of the terms of a clear and unambiguous contracts, is unavailable as a matter of law, (5) Count III must be dismissed because the claim is waived by Winget under the terms of the Guaranties, Pledge Agreements and Settlement Agreements, (6) Count IV must be dismissed because it fails to state a claim for shareholder oppression under M.C.L. § 450.1489 or any other claim upon which relief can be granted, (7) the complaint must be dismissed in its entirety as to JP Morgan Chase & Co. because it is not a proper party.

Black Diamond argues that (1) Counts I, III and IV are barred by <u>res judicata</u>, (2) Black Diamond must be dismissed from Count I because it is not a party to the contractual duties Winget asserts were breached, (3) Black Diamond is not named in Count II, regardless; Black Diamond is not a party to the contractual rights and duties at issue, (4) Count III fails to state a claim against Black Diamond because under Michigan's UCC, any legal obligations to preserve collateral rest with the Agent, (5) Count IV fails as a matter of law for several reasons, including that the claim can only

9

be brought as a derivative claims and is barred by the statute of limitations.

## B.  Is the 2006 Case Premature?

Winget has responded to all of the Agent and Black Diamond's complex legal arguments.  Notably, however, in his response to Black Diamond's motion, he repeatedly characterizes its claims in this case as "solely defensive claims."  Winget also says that he "seeks no affirmative relief beyond the right of set-off to any claim secured the Consortium."  This response raises a real problem with the Complaint, as both Black Diamond and the Agent picked up on and argued in their reply briefs.  That is, is the 2006 case premature?

As Black Diamond points out, as of yet there is no claim seeking to recover on the Guaranties or the Pledge Agreements against Winget, so there is nothing for him to defensively set off.  At most, Winget is seeking a declaratory ruling that if a suit is brought against him attempting to recover under the Guaranties and Pledge Agreements, his purely defensive allegations should work to fully or partially set-off such recovery.

The Agent similarly states that:

> In its October 3, 2006 Memorandum Opinion [in the Agent Case] this Court granted judgment to [the Agent] for enforcement of its audit rights under the "Winget Guaranty."  The Court also advised that it is dismissing the Agent's request for declaratory judgment regarding the "all reasonable efforts" clause § 5.2 in the PIM and Venco Pledge Agreements.  Based on the Court's reasoning in granting the Agent's audit rights, Plaintiffs now understand that the Winget Guaranty is in effect.  To save their claims from the broad waiver provision in that Guaranty, Plaintiffs now describe those claims as "solely defensive in nature."
> With the dismissal of the Agent's declaratory judgment claim, however, there is no action pending in which the Agent seeks an adjudication regarding the Guaranty or the Pledge Agreements.  Consequently, there is no claim pending against which Plaintiffs can raise their "purely defensive claims."  Their claims in the 2006 Case therefore are premature and should be dismissed.

Agent's reply at p. 1.

Notwithstanding the Court's directive to file a new complaint, at that time it did not fully understand the parameters of Winget's claims or how they relate to the events of Venture's bankruptcy. One thing that has not changed is the fact that the Agent has not yet taken any action to collect on the Guaranties or the Pledge Agreements. This does raise a real question of whether the 2006 Case is premature. To the extent that Winget wants to challenge the "reasonable efforts" provision of the Pledge Agreements, the Agent must first take some action. It has not. When the Agent does, which is likely given the large deficiency, the matter can be properly litigated. To make any ruling on whether the Agent acted reasonably before the Agent seeks affirmative relief would be an advisory decision and the Court would be operating in a vacuum.

What is also problematic for Winget, now that the complaint fleshes out Winget's claims against the Agent and Black Diamond, is whether the claims are barred by res judicata because they encompass events which took place before the Sale Order was entered in the bankruptcy court and involve issues that could have been raised in the bankruptcy court. At the hearing on the motions, the Court questioned counsel for Winget regarding the time frame surrounding his claims and invited counsel to file a supplemental paper detailing the timeline of Agent and Black Diamond's alleged wrongful conduct as extracted from the complaint. On March 2, 2007, Winget filed a paper styled "Plaintiffs' Annotated Complaint Extracts RE: Defendants' Wrongful Action Before May 24, 2004," to which the Agent responded. A review of Winget's supplemental filing, as will be explained, makes clear that his claims against the Agent and Black Diamond relevant to their actions with respect to the Venture Entities and the

Deluxe Entities are barred by res judicata.

### C.  Res Judicata

As eluded to above, on April 19, 2005, the Bankruptcy Court entered a Sale Order approving of the sale of substantially all of the assets of the Venture Entities and the Deluxe Entities; it was consummated in May 2005.  Both the Agent and Black Diamond argue that Winget's claims are barred by res judicata, particularly by the Sale Order entered by the Bankruptcy Court.

According to the Sixth Circuit, the doctrine of res judicata "promote[s] the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources."  Sanders Confectionery Prods., Inc. v. Heller Fin., Inc., 973 F.2d 474, 480 (6th Cir.1992).  See Federated Department Stores v. Moitie, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).  Res judicata should not be confused with collateral estoppel or issue preclusion.  Res judicata, or claim preclusion, has four elements:

> 1. A final decision on the merits in the first action by a court of competent jurisdiction;
>
> 2. The second action involves the same parties, or their privies, as the first;
>
> 3. The second action raises an issue actually litigated or which should have been litigated in the first action;
>
> 4. An identity of the causes of action

King v. South Cent. Bell Tel. & Tel. Co., 790 F.2d 524 (6th Cir.1986); Westwood Chemical Co. v. Kulick, 656 F.2d 1224 (6th Cir.1981).

First, the Sale Order qualifies as a final judgment for purposes of res judicata.  In re Hi Tech Fleet Serv., Inc., 339 B.R. 428, 432-33 (Bankr. E.D. Mich. 2006) (holding that

although the Sixth Circuit has not addressed the issue, other circuits have found that a sale order has a res judicata effect even though the order does not close the bankruptcy).

Second, it is clear that the parties in the 2006 case were parties in the bankruptcy proceedings. Winget pursued his interest both as sole owner of the debtors and as guarantor of Venture's debt. See Browing v. Levy, 283 F.3d 761, 774-77 (6th Cir. 2002) (shareholder-creditors are considered participants in bankruptcy proceeding for purposes of res judicata); Sanders Confectionary Prods., Inc. v. Heller Fin. Inc., 973 F.2d 474, 480-81 (6th Cir. 1992).

Third, the "defensive claims" that Winget now raises should have been litigated in the bankruptcy court. "A matter is related to a bankruptcy case if 'the outcome of that proceeding could conceivably have any effect on the estate begin administered in bankruptcy.'" Sanders, 973 F.2d at 482 (citations omitted). Claims should have been brought in a bankruptcy proceeding where successful adjudication "would have affected the bankruptcy estate." Id. at 483. Although Winget suggests that he did not know all the facts needed to bring the claims before the bankruptcy court, this assertion is belied by the allegations in the complaint and the record. Winget claims that the sale of the Venture Entities and the Deluxe Entities, which was done at the behest of the Agent and other creditors, did not generate sufficient funds to cover Venture's outstanding obligations, thereby leaving Winget, Venco, and PIM "wrongfully exposed" to liability under the Guaranties because the value of the Deluxe Entities had decreased as a result of the Agent and Black Diamond's actions. As the Agent points out, all of these alleged wrongful actions took place before the Sale Order in April 2005. Indeed, the

13

complaint alleges that the "final components of the Consortium Scheme" were implemented in May 2004 and the drop in the value of the Deluxe Entities is alleged to have occurred in the months thereafter. See Complaint at ¶ 39, 48. Winget expressed this very concern to the bankruptcy court, as follows:

> Mr. Winget believes he has meritorious claims against the Senior Lenders, who, led by Bank One, have engaged in a course of unlawful conduct resulting in damages to the Debtors' business; in essence, a precipitous decline in the value of the Venture Debtors' and Deluxe Debtors' businesses and assets and a corresponding devaluation of Mr. Winget's interests. That conduct has also increased the risk that Bank One would call upon Mr. Winget's guaranty and exercise remedies against the additional collateral provided by Mr. Winget for that guaranty. As a result, Mr. Winget has claims against the Senior Lenders and Bank One for either money damages or rescission with regard to the collateral provided and liens granted to Bank One pursuant to the 8th Amendment.

<u>Objection of Larry Winget and the Larry J. Winget Living Trust to Venture Debtors' and Deluxe Debtors' Motion for Order Approving, Among Other Things, the Sale of Substantially All of the Debtors' and Deluxe Debtors' Assets</u>, filed in bankruptcy case no. 03-48939. Winget, however, later resolved his objections and agreed that the sale could go forward. Winget did not challenge or appeal the Sale Order.

In the supplemental paper, Winget extracts other paragraphs of the complaint which contain allegations of wrongful conduct by the Agent and Black Diamond, as members of the "consortium" which go back as far as October 2003. See Complaint at ¶¶ 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43. However, as the Agent points out, all of the allegations relating to events prior to the May 24, 2004 filing of the Deluxe Entities bankruptcy petition involve matters which were under the aegis of the bankruptcy court. As the Agent states:

> ... Winget had already litigated the Contribution Agreement at length and had ample opportunity during the Venture and Deluxe bankruptcy proceedings to

14

> litigate (a) the financing of the Venture companies' litigation, (b) the decision not to accept a supposedly higher-yieling Yucaipa proposal from the Venture and Deluxe companies, (c) the Agent's exercise of its proxies, and (d) Deluxe's voluntary bankruptcy.

"The final element of res judicata - that there be an 'identity of claims' - is satisfied if 'the claims arose out of the same transaction or series of transactions, or whether the claims arose out of the same core of operative facts.'" Browning, 283 F.3d at 773-74.  The defensive claims are identical to those he could have asserted in the bankruptcy proceedings.  As explained above, the defensive claims are based on events which took place prior to and during the bankruptcy proceedings.  Notably, prior to entry of the Sale Order, Winget filed a motion in the bankruptcy court seeking the appointment of a Chapter 11 trustee for the estates of the Deluxe Entities.  He argues that the "Deluxe Debtors' current management is being directed by the lender group" and that the CEO of the Deluxe Debtors "pillaged the Deluxe Debtors" and that this "illustrated quite prominently that [the CEO] is acting at the behest of Bank One and the Pre-Petition Lenders rather than as fiduciary to the Deluxe Debtors."  This motion, according to Black Diamond, was withdrawn by Winget before adjudication.  Winget does not say otherwise.

Overall, Winget's claims are barred by res judicata.  All of the allegations of wrongdoing by the Agent and Black Diamond, whether they took place prior to the bankruptcy filings or during the bankruptcy proceedings, could have been raised in the bankruptcy court.  As noted above, Winget raised some objections in the bankruptcy court, but chose to withdraw them and let the Sale Order go forward.  Winget cannot now challenge actions which had he challenged earlier and been successful, could have

affected the outcome of the bankruptcy proceedings.

Moreover, Winget's claims were not reserved. Language reserving claims must be precise, identifying the particular claims to be retained. Browning, 283 F.3d at 774-75. Here, Winget did reserve some claims. The Sale Order contains the following reservation clause:

> Nothing in the Sale Order ... shall limit or impair any claim...that Mr. Larry J. Winget or any entity owned or controlled by Larry J. Winget (other than the Debtors) (collectively, the "Winget Entities") have or may have against [the Agent] or [Black Diamond .. <u>relating to their acts, omissions or relationship, contractual or otherwise, as to the Winget Entities</u>.

Sale Order at ¶ 39 (emphasis added).

This language is clear. Winget, PIM, and Venco reserved claims relating to the Agent and Black Diamond's conduct as to the Winget Entities. The Winget Entities are defined as all Winget owned or controlled entities <u>other than the Debtors</u> [Deluxe and Venture]. Thus, claims relating to the Agent and Black Diamond's actions as to the Debtors were not reserved. That is precisely the claims Winget asserts here - claims based on the Agent and Black Diamond's actions as to the Debtors, specifically the Deluxe Entities. The complaint alleges that "the Consortium Scheme" engaged in a "coup d'etate over the Deluxe Companies." Complaint at ¶ 35.

In an attempt to circumvent the language of the Sale Order, Winget argues that paragraph 39 only prevents "claims <u>asserted by</u> the debtors." The words "asserted by" does not appear in paragraph 39; the relevant language is that claims relating to "acts, conduct, omissions or relationship, contractual or otherwise, <u>as to</u> the Winget Entities." are preserved. Winget also argues that the claims involve the Agent and Black Diamond's conduct "as to Winget and not as to [Venture and Deluxe]. This is belied by

16

the complaint, which clearly asserts allegations as to Venture and Deluxe.  As explained by the Agent in its reply brief:

> Plaintiffs specify that their "claim is that the sale approved by the Bankruptcy Court was caused by the Consortium's abandoning its duty to Winget as a Guarantor to instead pursue gaining control of PIM and Venco." Pl. Resp. To Agent at p. 5.  This allegation directly challenges the express ruling of the bankruptcy court that the "members of the buyer" (i.e. the Consortium), negotiated, proposed and entered into the Sale Agreement "without collusion, in good faith."

Agent's Reply at p. 3.

Winget's argument that his claims were not ripe in the bankruptcy court because he would not have been able obtain the "full defensive remedy" sought in this case, is also unavailing.  The only remedy Winget seeks is to extricate himself from the Guaranties and Pledge Agreements because the Agent and Black Diamond (included in the Consortium) sold Venture and the Deluxe Entities at a price which exposed Winget to liability.  At the time of the Sale Order, Winget knew that any decrease in value of the Venture or Deluxe Entities would result in a deficiency on the underlying debt and that exposure under the Guaranty would likely result.

### D.  In the End

Winget has crafted a creative complaint, but it cannot escape the confines of res judicata.  Winget's allegations of wrongdoing by the Agent and Black Diamond relate to events which could have and should have been raised in the bankruptcy court prior to entry of the Sale Order.

To the extent that Winget seeks to challenge the "reasonable efforts" provision, which is probably Winget's only arguably legitimate concern, he must wait until the Agent seeks to enforce the PIM and Venco Pledge Agreements.  Until such time, claims

of wrongdoing by the Agent are premature.

    Given this determination, the Agent's motion to strike the jury demand is moot.

    SO ORDERED.

                                             s/Avern Cohn
                                             AVERN COHN
                                             UNITED STATES DISTRICT JUDGE

Dated:  March 7, 2007

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, March 7, 2007, by electronic and/or ordinary mail.

                                             s/Julie Owens
                                             Case Manager, (313) 234-5160